1

2

3

4

5

6

7        UNITED STATES DISTRICT COURT

8        CENTRAL DISTRICT OF CALIFORNIA

9

10

11

12

13

14

15

16

| | |
|---|---|
| SHONALI BOSE, an individual; BEDABRATA PAIN, an individual, | ) CASE NO. CV 11-06087 MMM (SHx) ) |
| Plaintifs, | ) ORDER REGARDING DEFENDANT'S ) MOTIONS *IN LIMINE* |
| vs. | ) ) |
| WAHL CLIPPER CORP., an Illinois corporation doing business in California; TARGET CORP., a Minnesota corporation doing business in California, and DOES 1-10 | ) ) ) ) ) ) |
| Defendants. | ) ) |

17      On July 22, 2011, Shonali Bose and Bedabrata Pain filed this action against Wahl Clipper

18   Corporation and Target Corporation.[1]  Plaintiffs are the parents of Ishan Bose-Pyne, who was

19   killed when an allegedly defective Wahl beard and mustache trimmer he was using purportedly

20   caused his clothing and skin to ignite.[2]  On March 12, 2012, the parties stipulated that Target be

21   dismissed from the action with prejudice, leaving Wahl as the only defendant.[3]  On July 6, 2012,

22   the court granted Wahl's motion for summary judgment on plaintiffs' prayer for punitive damages,

23

24   _____

25      [1]Complaint for Damages ("Complaint"), Docket No. 1 (Jul. 22, 2011).

26      [2]*Id.*, ¶¶ 1, 10.

27      [3]Stipulation of Dismissal of Defendant Target Corporation ("Target Dismissal"), Docket

28   No. 31 (Mar. 13, 2012).

but denied the motion in all other respects.[4]  In late June and early July, Wahl filed fifteen motions *in limine*.[5]

---

[4]Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment ("MSJ Order"), Docket No. 67 (July 6, 2012).

[5]Defendant's Notice of Motion and Motion *in Limine* to Exclude Evidence or Comment Concerning Plaintiff Bedabrata Pain's Claims for Emotional Distress Damages ("Emotional Distress MIL"), Docket No. 49 (June 29, 2012); Defendant's Notice of Motion and Motion *in Limine* to Exclude Comments Made by Defendant or Defense Counsel about the Merits of Plaintiffs' Case or Cause of the Incident Forming the Basis of this Action ("MIL to Exclude Comments"), Docket No. 50 (June 29, 2012); Defendant's Notice of Motion *in Limine* to Exclude Photographs of Decedent's Charred Body ("Photo MIL"), Docket No. 51 (June 29, 2012); Defendant's Notice of Motion and Motion *in Limine* to Reduce Damages for Healthcare Expenses to Amounts That Were Paid to and Accepted by Plaintiffs' and/or Decedent's Healthcare Providers ("Healthcare Expenses MIL"), Docket No. 53 (June 29, 2012); Defendant's Notice of Motion and Motion *in Limine* to Exclude Evidence or Comment Concerning Decedent's Hearsay Statements Following the Subject Accident ("Hearsay MIL"), Docket No. 55 (June 29, 2012); Amendment to Motion *in Limine* to Exclude Evidence or Comment Concerning Decedent's Hearsay Statements Following the Subject Accident ("Amendment to Hearsay MIL"), Docket No. 65 (July 2, 2012); Defendant's Notice of Motion and Motion *in Limine* to Exclude Undisclosed Expert Testimony in the Mental Health Profession ("Undisclosed Expert MIL"), Docket No. 56 (Jun. 29, 2012); Defendant's Notice of Motion and Motion *in Limine* to Preclude Plaintiffs from Making any Mention Regarding any Product Recalls of Defendant's Products Not Related to the Subject Trimmer/Clipper ("Product Recalls MIL"), Docket No. 57 (June 29, 2012); Defendant's Notice of Motion and Motion *in Limine* to Exclude Evidence, Comment or Interrogation Concerning Liability Insurance ("Liability Insurance MIL"), Docket No. 58 (June 29, 2012); Defendant's Notice of Motion and Motion *in Limine* to Limit the Testimony of Plaintiffs' Experts to the Substance of the Facts and Opinions which the Expert Testified to at Deposition and in his Rule 26 Disclosure ("Limit Testimony of Experts MIL"), Docket No. 59 (June 29, 2012); Defendant's Notice of Motion and Motion *in Limine* to Exclude Evidence of Settlement Negotiations or Offers to Compromise ("Negotiation MIL"), Docket No. 60 (June 29, 2012); Defendant's Notice of Motion and Motion *in Limine* to Exclude Evidence or Comment Concerning Other Incidents, Claims Allegations, Citations and Actions Involving Other Incidents ("Exclude Evidence Concerning Other Incidents MIL"), Docket No. 61 (June 29, 2012); Defendant's Notice of Motion and Motion *in Limine* to Preclude Evidence of Subsequent Remedial Measures ("Remedial Measures MIL"), Docket No. 62 (June 29, 2012); Defendant's Notice of Motion and Motion *in Limine* to Preclude Testimony from Witnesses, Production of Documents and Other Evidence Not Previously Disclosed by Plaintiffs ("Preclude Witness Testimony MIL"), Docket No. 63 (Jul. 2, 2012); Defendant's Notice of Motion and Motion *in Limine* to Exclude Testimony of Plaintiffs' Expert Erik Christiansen ("Christiansen MIL"), Docket No. 64 (Jul. 2, 2012); Defendant's Corrected Notice of Motion *in Limine* to Exclude Evidence or Comment Concerning

# I.  FACTUAL BACKGROUND

### A.    Plaintiffs' Complaint

Plaintiffs allege that on September 2, 2010, Bose-Pyne was using a Wahl beard and mustache trimmer in the bathroom at his family's home.[6]  They contend that the clipper was defective, and caused Bose-Pyne's skin and clothing to ignite.[7]  Bose-Pyne's mother and brother Vivian allegedly witnessed Bose-Pyne engulfed in flames as he ran through the house.[8]  Plaintiffs assert that Bose-Pyne ran outside of the house and into the family swimming pool to extinguish the flames.[9]  They contend that when he emerged from the pool, his clothes were for the most part incinerated.  Bose-Pyne suffered third degree burns to much of his body, "including his chest, back, neck, arms and thighs in addition to oral and nasal burns."[10]

He was transported to Cedars-Sinai Hospital, and then to the Southern California Regional Burn Center at USC Medical Center, where he underwent two skin graft operations.[11]  Despite receiving this treatment, Bose-Pyne died on September 13, 2010.[12]

# II. DISCUSSION

Plaintiffs have provided notice that they do not oppose six of Wahl's fifteen motions *in*

---

Plaintiff, Shonali Bose's Lost Profits ("Lost Profits MIL"), Docket No. 68 (July 6, 2012).

[6]Complaint, ¶¶ 9, 11.

[7]*Id.*, ¶ 10.

[8]*Id.*, ¶ 13.

[9]*Id.*, ¶ 13.

[10]*Id.*

[11]*Id.*, ¶ 14.

[12]*Id.*

*limine*.[13]  Accordingly, the court grants Wahl's motions (1) to exclude any evidence related to emotional distress suffered by Pain, Bose-Pyne's father; (2) to limit plaintiffs' damages based on medical bills to the amount actually paid by plaintiffs' health insurer, rather than the higher amount billed but written off by the healthcare provider; (3) to preclude plaintiffs from calling an expert witness in psychotherapy, counseling, or psychiatry to testify regarding Bose's emotional distress claim; (4) to exclude evidence or comment regarding liability insurance; (5) to exclude evidence of settlement negotiations or offers of compromise; and (6) to exclude evidence of Wahl's subsequent remedial measures.  The court considers each of the remaining motions *in limine* in turn.

> **A.    Defendant's Motion to Exclude Comments Made by Defendant or Defense Counsel about the Merits of Plaintiffs' Case or Cause of the Incident Forming the Basis of this Action**

Wahl asks the court to exclude evidence concerning "statements defendant's agents, employees or attorneys . . . concerning the merits of this case or the possible cause of the incident forming the basis of this accident."[14]  It contends such comments would be irrelevant and inadmissible under Rule 402 of the Federal Rules of Evidence.[15]

Rule 402 of the Federal Rules of Evidence requires that all evidence introduced at trial be

---

[13]Plaintiffs' Statement of Non-Opposition to Defendant's Emotional Distress MIL ("Non-Opp to Emotional Distress MIL"), Docket No. 73 (July 9, 2012); Plaintiffs' Statement of Non-Opposition to Defendant's Healthcare Expenses MIL ("Non-Opp to Healthcare Expenses MIL), Docket No. 85 (July 9, 2012); Plaintiffs' Statement of Non-Opposition to Defendant's Undisclosed Expert MIL ("Non-Opp to Undisclosed Expert MIL"), Docket No. 84 (July 9, 2012); Plaintiffs' Statement of Non-Opposition to Defendant's Liability Insurance MIL ("Non-Opp to Liability Insurance MIL"), Docket No. 78 (July 9, 2012); Plaintiffs' Statement of Non-Opposition to Defendant's Negotiation MIL ("Non-Opp to Negotiation MIL"), Docket No. 80 (July 9, 2012); and Plaintiffs' Statement of Non-Opposition to Defendant's Remedial Measures MIL ("Non-Opp to Remedial Measures MIL"), Docket No. 83 (July 9, 2012).

[14]MIL to Exclude Comments at 1-2.  Wahl's motion does not apply to comments made at trial or in depositions.

[15]*Id*. at 3.

1  relevant. FED.R.EVID. 402 ("All relevant evidence is admissible. . . . Evidence which is not

2  relevant is not admissible"). "Relevant evidence" is evidence having any tendency to make the

3  existence of any fact that is of consequence to the determination of the action more probable or

4  less probable than it would be without the evidence. See FED.R.EVID. 401.

5  Wahl notes that the court previously struck allegations concerning its agents' statements

6  about the cause of the accident from plaintiffs' complaint.[16] In their complaint, plaintiffs alleged

7  that Wahl had suggested that Bose-Pyne died as a result of "a bizarre experiment with Axe body

8  spray that he intended to film and show off on the internet,"[17] and that Wahl had "also suggested

9  that Ishan may have been simply a troubled youth and/or using drugs, intimating that he took his

10  own life."[18] Noting that plaintiffs' intentional infliction of emotional distress claim was premised

11  on defendants' failure to exercise due care in the design, manufacture, and sale of the clipper,

12  rather than any post-incident conduct, and that defendant had no duty to refrain from making

13  statements regarding alternate possible causes of the accident, the court concluded that the

14  allegations "serve[d] no other purpose than to prejudice defendants by casting them in a bad

15  light."[19] The court therefore granted a motion to strike the allegations.[20]

16  Plaintiffs do not appear to dispute that theories advanced by Wahl or its counsel concerning

17  the cause of the accident that are not raised by Wahl at trial are irrelevant. They argue, however,

18  that "when alternate theories are floated in an attempt to influence the decision of the jury, justice

19  requires that [p]laintiffs be allowed to rebut the purported explanation offered by Wahl or its

---

[16]*Id.*

[17]Complaint, ¶ 23.

[18]*Id.*, ¶ 24.

[19]Order Granting Defendants' Motion to Dismiss and Granting in Part and Denying in part defendants' Motion to Strike ("Order Regarding Motions to Dismiss and Strike"), Docket No. 33 (Mar. 29, 2012) at 15-16.

[20]*Id.* at 16.

allies."[21]  Plaintiffs do not appear to dispute that theories articulated by Wahl or its counsel concerning the accident that are not raised by Wahl at trial are not relevant.  They argue, however, that "when alternate theories are floated in an attempt to influence the decision of the jury, justice requires that [p]laintiffs be allowed to rebut the purported explanation offered by Wahl or its allies."[22]  To the extent that Wahl intends to raise an alternate theory for the accident, plaintiffs are entitled to rebut that theory, not only through cross examining defense witnesses, but also in their opening statement and closing argument.  It is not clear whether Wahl currently maintains that Bose-Pyne intentionally took his own life.[23]  Wahl's Memorandum of Contentions of Fact and Law, however, makes clear that it intends to argue at trial that Bose may have been engaged in an experiment or prank using Axe body spray.[24]  It is also clear that Wahl intends to

---

[21](Opposition Re: Motion *in Limine* to Exclude Comments Made by Defendant or Defense Counsel about the Merits of Plaintiffs' Case or Cause of the Incident Forming the Basis of This Action ("Opp. to MIL to Exclude Comments"), Docket No. 74 (July 9, 2012), at 4.

[22](Opposition Re: Limine to Exclude Comments Made by Defendant or Defense Counsel about the Merits of Plaintiffs' Case or Cause of the Incident Forming the Basis of this Action ("Opp. to MIL to Exclude Comments"), Docket No. 74 (July 9, 2012), at 4.

[23]Wahl notes in its Memorandum of Contentions of Fact and Law that, based on the evidence, "it can be reasonably inferred that it was decedent who carelessly spilled the alcohol or otherwise deliberately emptied the contents of the bottle."  (Defendant, Wahl Clipper Corp.'s Memorandum of Contentions of Fact and Law ("Wahl's Memorandum"), Docket No. 71 (July 9, 2012) at 13.  It is not clear if this observation is meant to suggest a possible suicide, or if it is merely meant to refer to Wahl's hypothesis that Bose-Pyne set himself on fire with Axe body spray or rubbing alcohol as an experiment or prank.

[24]*Id.* at 14-15 ("Defendant also contends that it can be inferred from the fact decedent's shirt and upper torso caught fire that a high concentration of alcohol of other flammable substance, was on the decedent's person or clothing at the time of the incident, due to the high evaporation rate of isopropyl alcohol.  Furthermore, in addition to the empty bottle of alcohol, there was an empty bottle of Axe body spray found in the bathroom by fire investigators.  Numerous You Tube videos depict teens igniting Axe body spray on their bodies and watching it burn away.  Defendant suggests that the decedent may have been engaged in such an activity and that he was unable to extinguish the flames in time to avoid suffering third degree burns")

argue Bose-Pyne may have been killed while attempting to use isopropyl alcohol to get high.[25]

In light of this fact, Wahl can hardly argue that evidence of the alternate theories it raised early in the litigation is irrelevant.  Nor can it claim that it will be unfairly prejudiced at trial by plaintiffs' reference to theories that it plans to raise in its own presentation of evidence.[26]  Wahl's motion consequently must be denied to the extent it seeks to preclude plaintiffs from commenting on the fact that it hypothesizes Bose-Pyne was injured either while intentionally igniting Axe body spray as an experiment or prank, or while attempting to "huff" isopropyl alcohol. Additionally, the court directs Wahl, at the hearing on this motion, to state whether it intends to argue or suggest at trial that Bose-Pyne's injuries were the result of an intentional effort to harm himself. To the extent Wahl clearly disclaims reliance on such a theory, the court agrees that reference to it by plaintiffs would be irrelevant, and will preclude all such references.  FED.R.EVID. 402.

> **B.    Defendant's Motion to Exclude Photographs of Decedent's Charred Body**

Wahl next seeks to preclude plaintiffs from introducing photographs of Bose-Pyne's charred body.[27]  Wahl attachs thirteen exhibits to its motion *in limine*,[28] and argues that each should be excluded as prejudicial and cumulative.[29]  The photographs graphically depict the extent of Bose-Pyne's burns.  One photograph appears to show Bose-Pyne's arm stripped of much of its

---

[25]*Id.* at 15 ("There is also evidence that the decedent may have been involved in an activity known as 'huffing,' where a person saturates a roll of toilet paper or paper product with alcohol or another solvent, ignites it and inhales the fumes in order to get high").

[26]Wahl is apparently concerned that evidence of the alternate theories for the accident that it raised will make it appear callous.  (See Memorandum of Points and Authorities in Reply to Opposition to Defendant's Motion *in Limine* to Exclude Comments Made by defendant or defense Counsel About the Merits of Plaintiffs' Case or Cause of the Incident Forming the basis of this Action ("Reply to MIL to Exclude Comments"), Docket No. 95 (Jul. 16, 2012).  It is not clear how this concern is consistent with its intent to raise these same theories to the jury at trial.

[27]Photo MIL at 1.

[28]*Id.* Exhs. A-M.

[29]Photo MIL at 3-4.

1    flesh.[30]    Others show large portions of his body, including his torso, shoulders, and groin,

2    blackened and swollen and covered with what appear to be severe burns.[31]

3        As noted, Rules 402 provides that relevant evidence is generally admissible. FED.R.EVID.

4    402 ("All relevant evidence is admissible, except as otherwise provided by the Constitution of the

5    United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme

6    Court pursuant to statutory authority"). Under Rule 403, however, relevant evidence "may be

7    excluded if its probative value is substantially outweighed by the danger of unfair prejudice,

8    confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time,

9    or needless presentation of cumulative evidence." FED.R.EVID. 403.

10        "A photograph that presents gruesome details, such as crime scene or autopsy photos, or

11    photos of persons with personal injuries, may be objected to as unfairly prejudicial but typically

12    are admitted." 2 MCCORMICK ON EVIDENCE § 215 (6th ed. 2009) (citing *Batchelor v. Cupp*, 693

13    F.2d 859, 865 (9th Cir.1982) (affirming the admission of photographs), and *United States v.*

14    *Yahweh*, 792 F.Supp. 104, 106 (S.D. Fla.1992) (holding that neither gruesome photographs nor

15    30 by 40 inch enlargements were unfairly prejudicial)); see also *Walker v. Norris*, 917 F.2d 1449,

16    1453 n. 9 (6th Cir. 1990) (summarily affirming district court's admission of post-accident

17    photographs). The Ninth Circuit has approved the admission of photographs that are comparably

18    gruesome and potentially prejudicial to those at issue here after determining that they were

19    probative of facts in dispute. See, e.g., *United States v. Boise*, 916 F.2d 497, 505 (9th Cir. 1990)

20    (admitting an autopsy photograph of a six-week old baby, and citing *United States v. Bowers*, 660

21    F.2d 527, 529-30 (5th Cir. 1981) (holding that the admission of a photograph of a child's

22    lacerated heart was not an abuse of discretion)); *Batchelor*, 693 F.2d at 865 (9th Cir. 1982)

23    

24        [30]Photo MIL, Exh. F.

25        [31]See, e.g., *id.*, Exhs. G-M. Wahl asserts that one of the photographs "is extremely
26    graphic, [and] adds nothing of relevance to plaintiffs' case that could not, and presumably will not,
27    be presented by plaintiffs' medical witnesses and other witnesses who observed the decedent after
28    the incident." (Photo MIL at 4.) Wahl does not identify the photograph to which it makes
     reference. Having reviewed the exhibits, the court cannot which photograph Wahl believes is
     markedly more graphic than the others.

(holding that photographs of homicide victims were not unfairly prejudicial).

Wahl does not argue that the photographs are irrelevant, and plaintiffs argue that they "corroborate Shonali's version of the facts."[32]  Plaintiffs do not explain how the photographs support Bose's account of the incident. It is undisputed that Bose-Pyne died as a result of extremely serious burns covering a large amount of his body.  The critical issue is whether the fire was triggered by the Wahl trimmer; plaintiffs do not argue or articulate how the nature or extent of Bose-Pyne's injuries helps to establish that it was the trimmer, rather than something else, that initiated the fire.  See *Gomez v. Ahitow*, 29 F.3d 1128, 1139-40 (7th Cir. 1994) (holding that several "gruesome" photographs of a murder victim's body were irrelevant in the suspected murderer's trial where "neither the fact of . . . death nor the cause of . . . death were at issue," and rejecting the state's "conclusory" argument that "the photographs were admitted properly because they were corroborative of testimonial evidence and were probative of the circumstances of . . . death").  The photographs' probative value in proving the cause of the accident appears to be limited at best.

Plaintiffs are on firmer ground, however, in arguing that the photographs are relevant to prove their damages.[33]  As courts have noted, there is value to admitting photographs, even gruesome ones, to aid the jury in assessing the scope of damage.

> "No matter how articulate a witness may be, the true dimensions of a serious injury are not reducible to words.  Only a picture can convey the extent and severity of the injury and thus the legitimacy of the plaintiff's claimed physical suffering and mental anguish. It is for that reason that courts – at least in the federal system – uniformly admit pictures that display, often in a graphic way, the consequences of accidents.  Indeed, where the accident is serious, the need for the trier of fact to have before it the most explanatory evidence is obviously more important than

---

[32]Plaintiffs Shonali Bose and Bedabrata Pain's Opposition to Defendant Wahl Clipper Corporation's Motion *in Limine* to Exclude Photographs of Decedent's Charred Body ("Opp. To Photo MIL"), Docket No. 76 (Jul. 9, 2012) at 5.

[33]*Id.*

where the accident is insignificant.  Contrary to the implicit argument made by the defendant, the probative value of photographs of injuries is not automatically 'substantially outweighed' by the danger of 'unfair' prejudice."  *Thakore v. Universal Mach. Co. Of Pottstown, Inc.*, 670 F.Supp.2d 705, 718-19 (N.D. Ill. 2009) (citing Fed.R.Evid. 403).

See also *Dabney v. Montgomery Ward & Co.*, 761 F.2d 494, 500 (8th Cir. 1985) (in a products liability action seeking damages for injuries sustained in a fire allegedly caused by a furnace manufactured by defendant, the district court did not abuse its discretion in admitting photographs depicting the nature and extent of the burns to plaintiff's body where the nature and extent of her physical injuries was an issue in the case); but see *Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1004 (5th Cir. 1998) (excluding photographs of a decapitated and badly burned body where oral testimony was sufficient to establish family's mental anguish).

Although plaintiffs themselves were not injured, the graphic nature of the photographs is highly probative of the pain and suffering Bose allegedly experienced when she saw her son so badly injured.[34]

The court is cognizant, however, of the risk that graphic photographs may inflame the jury, or distract jurors' focus from the critical issues in the case.  Rule 403 instructs that relevant evidence is not to be excluded when the risk of prejudice outweighs its probative value, but only when the risk "substantially outweighs" the probative value of the evidence.  Fed.R.Evid. 403. Here, where the evidence is significantly probative of plaintiffs' damages, the court cannot conclude that the photographs should be excluded on prejudice grounds.[35]  As Wahl notes,

---

[34]Wahl contends that the photographs were taken several days after the fire, "after the decedent's body had swollen and developed scabs and bruises," and that they are not indicative of his injuries immediately following the accident as a result.  (Photo MIL at 2.)    Any discrepancies between what is depicted in the photographs and what Bose saw of her son's injuries the day of the accident, however, is a topic best addressed through cross-examination.

[35]Wahl cites *Navarro de Cosme v. Hospital Pavia*, 922 F.2d 926 (1st Cir. 1991), and *United States v. Katz*, 178 F.3d 368 (5th Cir. 1999), as support for its assertion that the evidence should be excluded.  (Photo MIL at 5.)  In *Navarro de Cosme*, plaintiffs sought to introduce

however, Rule 403 also permits the court to exclude evidence that is needlessly cumulative.[36]  *Id.*  While the court concludes that excluding the photographs entirely is not appropriate, it concludes that introducing thirteen photographs of Bose-Pyne's injuries, or examining witnesses about the photographs at length, would be needlessly cumulative and unduly prejudicial.  With these comments in mind, plaintiffs are directed to identify, on or before **August 6, 2012**, which of the thirteen photographs they seek to present to the jury so the court can assess whether the evidence will be cumulative.  See *Thakore*, 670 F.Supp.2d at 719 ("This is not to say that the plaintiff has an unlimited right to introduce as many photographs as she chooses or that there are no limits on admissibility other than relevancy.  Quite the contrary.  But it is within the district court's quite broad discretion under Rule 403 to determine when enough is enough"); *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 586 (5th Cir.1985) (noting that the trial court had excluded some photographs of the victim's injuries, but admitted two that showed the victim's abdominal area in its repaired condition).

---

photographs of a stillborn fetus to prove that, contrary to the testimony of a witness, the death of the fetus had not been caused by the umbilical cord wrapping around its neck. *Navarro de Cosme*, 922 F.2d at 930. While the district court found this evidence highly prejudicial and inflammatory and excluded it, and the First Circuit noted that plaintiffs "were able to present other evidence in support of their argument that the umbilical cord did not cause the death of the fetus," namely, their expert witnesses' testimony. *Id.* at 931. In *Katz*, the Fifth Circuit affirmed the district court's decision to exclude GIF images, in part because the "district court ruled admissible a videotape that fulfills the government's burden on [the same] element . . . ." *Katz*, 178 F.3d at 374. Neither case suggests that the court either must or should exclude the photographs here. While Bose can testify to her feelings, it is almost certain that she cannot adequately describe what she saw the day of the accident.  Some photographic evidence will assist plaintiffs in conveying to the jury the full extent of the emotional distress she experienced. Here, as explained above, no other evidence has been proffered which as vividly depicts the extent of Bose-Pyne's injuries, and is as suggestive of the emotional suffering that plaintiffs experienced as a consequence.

[36]Photo MIL at 4.  Additionally, under Rule 611, the court is charged with exercising reasonable control over the presentation of evidence to avoid wasting time. FED.R.EVID. 611(a).

1    **C.    Defendant's Motion to Exclude Evidence or Comment Concerning Decedent's**

2    **Hearsay Statements Following the Subject Accident**

3    Wahl seeks to exclude anticipated testimony by Bose and paramedics that Bose-Pyne told

4    them he was shaving when the fire occurred.  Wahl argues the statements are inadmissible

5    hearsay.[37]

6    The court addressed this issue at length in its order on Wahl's motion for summary

7    judgment.[38]  In that order, the court concluded that Bose-Pyne's alleged statements were not

8    admissible as dying declarations, since Bose-Pyne's statements did not indicate any awareness that

9    death was imminent, and plaintiffs proffered insufficient evidence to support a finding that it was

10   "obvious from the nature and extent of the injuries he suffered that he must have known he could

11   not survive."[39]  The court, however, admitted Bose-Pyne's alleged statements to his mother under

12   the present sense exception, in which, whether or not a declarant is available as a witness, a

13   statement is not considered hearsay if it is "[a] statement describing or explaining an event or

14   condition, made while or immediately after the declarant perceived it."  FED.R.EVID. 801(1).[40]

15   The court noted that numerous courts had admitted statements made several minutes after the

16   incident being described occurred.[41]  While it observed that plaintiffs could have done more to

17   establish how many minutes elapsed between the time the fire was extinguished and Bose-Pyne's

18   alleged statements, it concluded that "Bose's testimony indicates . . . the gap in time was short,

19   and provided no real opportunity for reflection or fabrication."[42]  The court excluded evidence of

20   _____

21   [37]See Hearsay MIL at 3.

22   [38]MSJ Order at 11-19.

23   [39]*Id*. at 16.

24   [40]*Id*. at 19.

25   [41]*Id*. at 17.

26

27   [42]*Id*. at 18; see also *id*. ("None of plaintiffs' evidence establishes precisely how many
     minutes elapsed between the fire and Bose-Pyne's alleged statements to his mother and the

28   paramedics.  Bose's deposition indicates, however, that Bose-Pyne's conversation with her

Bose-Pyne's alleged statement to the paramedics, which they in turn allegedly communicated to a fire investigator, because there was no evidence as to when the statement had been made, and because, as presented in the summary judgment record, it was double hearsay.[43]  While the court considered Bose's testimony about her son's statements in resolving the summary judgment motion, it noted that "Wahl [could] renew its hearsay objection at trial if more detailed evidence is adduced that undermines the contemporaneity of Bose-Pyne's alleged statement to his mother."[44]

Although the court invited Wahl to renew its objection at trial, Wahl has raised the issue in a pretrial motion *in limine*.  "The . . . purpose of a motion *in limine* is to prevent the opposing side from asking a question or making comments in opening statements or otherwise bringing before the jury some fact which the movant believes will damage his case by the mere mention of it."  *Barnd v. City of Tacoma*, 664 F.2d 1339, 1343 (9th Cir. 1982) (Hug, J., dissenting); see also 21 Charles Alan Wright & Kenneth W. Graham, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE 2D § 5037.10 (2009) (describing the use of a "prophylactic motion *in limine*" for the purpose of "obtain[ing] an order of the court that the proponent of the evidence not mention its substance until the opponent has a chance to object and the court has an opportunity to rule on evidence so likely to prejudice the jury that the damage will be difficult or impossible to cure by means short of a mistrial").

The coming trial will hinge on the jury's view about the cause of the accident that killed Bose-Pyne.  If admitted, Bose-Pyne's alleged statements about the cause of the fire are likely to

---

occurred close to the time he jumped into the swimming pool, extinguishing the blaze.  Bose states that when Bose-Pyne jumped into the pool, she ran back inside the house to call emergency services.  She asserts that she was still at the front door speaking with emergency personnel when Bose-Pyne exited the pool and spoke to her.  While Bose was still on the telephone with paramedics, Bose-Pyne allegedly told her that the fire occurred while he was shaving, and that just before the fire there was a 'kind of a burst and a buzzing.'  Although Bose could not recall the exact time emergency personnel arrived, she said it happened '[v]ery fast' after she dialed 911" (citations omitted)).

[43]*Id.* at 19.

[44]*Id.*

1    be significant.  Even if Wahl ultimately introduced evidence at trial sufficient to cause the court

2    to reverse its conclusion and conclude that the evidence was inadmissible, a jury would have

3    difficulty disregarding references in opening statements to Bose-Pyne's account of the accident.

4    The problem, however, is that However, neither Wahl's motion *in limine* nor its reply raises

5    arguments different from those the court addressed at length in its summary judgment order, and

6    the court will not revisit those arguments here.[45]  Nor has any additional evidence been proffered

7    regarding the timing of the statements.  There is thus no basis for granting Wahl's motion at this

8    time.

9          Given the court's earlier comments regarding plaintiffs' showing,[46] and the risk of

10   prejudice to Wahl if a ruling admitting the evidence is later reversed, the court concludes that it

11   should conduct a Rule 104 hearing regarding the admissibility of the statements.  The court

12   therefore schedules such a hearing for **Tuesday, August 21, 2012 at 1:30 p.m.**  Plaintiffs are

13   directed to produce Shonali Bose to testify regarding the timing of and circumstances surrounding

14   her son's alleged statements.  Should plaintiffs wish to admit evidence of Bose-Pyne's purported

15   statements to paramedics, they must produce the paramedic or paramedics to whom the statements

16   were made to testify as well.[47]

17

18   _____

        [45]See generally Hearsay MIL; Hearsay Reply.

19
        [46]MSJ Order.at 18.

20
        [47]Plaintiffs argue that since it already ruled on the admissibility of Bose-Pyne's statements,

21   the court should apply the "law of the case" doctrine and deny the motion in its entirety.  (Hearsay
     Opposition at 3.)   The law of the case doctrine "posits that when a court decides upon a rule of

22   law, that decision should continue to govern the same issues in subsequent stages in the same

23   case."  *Arizona v. California*, 460 U.S. 605, 618 (1983).  The doctrine "does not constitute a
     limitation on the court's power but merely expresses the general practice of refusing to reopen

24   what has been decided."  *Slotkin v. Citizens Cas. Co.*, 614 F.2d 301, 312 (2d Cir. 1979).  Thus,
     a court is free to "depart from a prior holding if convinced that it is clearly erroneous and would

25   work a manifest injustice."  *Arizona v. California*, 460 U.S. at 619.  See also *White v. Murtha*,

26   377 F.2d 428, 431-32 (5th Cir. 1967).
           In this case, the court previously noted that the evidence proffered by plaintiffs did not

27   establish with precision when Bose-Pyne's statements were made.  It invited Wahl to raise the

28   issue again if additional evidence on that subject was proffered.  (MSJ Order at 18-19.)  The

**D.    Defendant's Motion to Preclude Plaintiffs from Mentioning Recalls of Wahl Products Other than the Subject Trimmer/Clipper**

Plaintiffs seek to introduce evidence of nine previous product recalls by Wahl, three of which were due to the risk of "possible electric shock"[48] and/or "injury to the user."[49] Wahl seeks to preclude plaintiffs, their attorneys, and all of their witnesses from mentioning recalls of any Wahl product other than the clipper at issue.[50]    Wahl contends that the evidence is not relevant under Rule 401.  It also asserts that the evidence would be highly prejudicial and misleading, and that it should be excluded under Rule 403.[51]

As noted, relevant evidence – that is, evidence that has any tendency to make the existence of any fact that is of consequence to determination of the action more probable or less probable – is generally admissible.  See FED.R.EVID. 401-402.  Rule 403, however, states that even

---

court, therefore, concludes that the law of the case doctrine does not preclude revisiting the decision reached in the summary judgment order.

[48]Plaintiffs' Opposition to Defendant's Motion to Preclude Plaintiffs from Making Any Mention Regarding Any Product Recalls of Defendant's Products Not Related to the Subject Trimmer/Clipper ("Opp. to Product Recalls MIL"), Docket No. 87 (July 9, 2012).

[49]*Id*. at 3.

[50]Product Recall MIL at 1.

[51]*Id*. at 3-4.  Wahl also argues that admitting the evidence would violate Rule 404(b), which states in pertinent part: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED.R.EVID. 404(b).  Rule 404(b)'s applicability to corporate defendants is unclear.  22 Charles Alan Wright, Kenneth W. Graham, FEDERAL PRACTICE AND PROCEDURE § 5233 at 358-61 (1st ed. 2012) (suggesting that the rule was not intended to apply to corporate defendants, but finding the answer uncertain); *id.*, § 5329 at 458-59; *Adams v. United States*, Civ. No. 03-0049-E-BLW, 2009 WL 1259019, *4 (D. Idaho May 3, 2009) ("Applied to this case, it is not entirely clear that Rule 404(b) covers corporations like DuPont.  A leading treatise on federal evidence concludes that it does not apply. See 22 Wright and Graham, FEDERAL PRACTICE & PROCEDURE, § 5233 at pp. 360, 458 (1978).  Even if the Rule did not strictly apply, its guidelines are useful in evaluating the admissibility of evidence").  The court need not resolve this issue, because, as explained *infra*, the evidence is not relevant, and thus not admissible regardless of the applicability of Rule 404(b).

1   relevant evidence "may be excluded if its probative value is substantially outweighed by the
2   danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations
3   of undue delay, waste of time, or needless presentation of cumulative evidence." FED.R.EVID.
4   403.

5           Courts have concluded that evidence of prior company recalls is relevant only if the
6   recalled products are "substantially similar in design and manufacture" to the allegedly defective
7   product. *Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991) ("The
8   general rule in federal courts is that '[a] showing of substantial similarity is required when a
9   plaintiff attempts to introduce evidence of other accidents as direct proof of . . . a design defect'");
10  *Lewy v. Remington Arms Co., Inc.*, 836 F.2d 1104, 1108 (8th Cir. 1988) (stressing that prior
11  recalls of different models are relevant only if the products are "substantially similar in design and
12  manufacture" to the product in question); see also *Olson v. Ford Motor Co.*, 410 F.Supp.2d 869,
13  873-74 (D. N.D. 2006) (recall evidence was not admissible where the recall involved different and
14  dissimilar models, different defects, and different purposes); compare *Malcolm v. Evenflo Co.,*
15  *Inc.*, 352 Mont. 325, 340 (2009) (evidence of injuries caused by *similar* products is relevant and
16  admissible).

17          Plaintiffs agree that substantial similarity is required to admit evidence of product recalls,[52]
18  and argue that the recalled products are substantially similar to the trimmer at issue for several
19  reasons:

20          "First, all are small house hold appliances that are used in the home (two being
21          personal grooming products). Second, [a] substantially similar defect is identified
22          as the cause of the recall in the hair clipper and the curling iron, a breakdown or
23          wear and tear in the materials making up the components of the device (outer cover
24          for the clipper and electrical insulation in the curling iron).  Finally, the potential
25          danger is the same from the defects in the products – electrical shock."[53]

26  _____

27  [52]Opp. to Product Recall MIL at 3.

28  [53]*Id.* at 4.

16

These broad similarities do not establish that evidence of prior recalls is relevant. Plaintiffs do not suggest that any of the components or manufacture of the clipper at issue here are similar to the components or manufacture of the recalled products. The fact that one product manufactured by Wahl caused electric shocks does not indicate that Wahl knew or should have known that the trimmer could cause electric shocks, unless the faulty component in the recalled product was the same or similar to a component in the trimmer. The tendency of one Wahl product to break down is not relevant to the alleged breakdown of the trimmer here, unless there are grounds for believing that the breakdowns were caused by the same or similar defect. See *Lewy*, 836 F.2d at 1009 (holding that the trial court abused its discretion by admitting evidence of defendant's previously recalled gun model, when the component parts were of a different shape and dimension than those in the gun model at issue); see also *Verzwyvelt v. St. Paul Fair & Marine Ins. Co.*, 175 F.Supp.2d 881, 888-89 (W.D. La. 2001) (holding, in a products liability case, that evidence of contamination in one food product was irrelevant to the existence of contamination in a different food product from another one of defendant's plants); *Jordan v. General Motors Corp.*, 634 F.Supp 72, 77 (E.D. La. 1985) (excluding evidence of a prior recall because it involved a different model year than the product in question). Based on plaintiffs' argument and their failure to adduce any evidence of similarity, the court concludes that the substantial similarity requirement is not met, and that the evidence is not relevant as a result.[54] Consequently, Wahl's motion *in limine* is granted.

---

[54]Even were the court to conclude that the evidence had some minimal relevance, that relevance would be substantially outweighed by the evidence's risk of prejudice and the risk of undue delay. Were evidence of other product recalls admitted, this would precipitate a series of mini-trials concerning the similarity of the products and the reasons for the recalls. Such evidence would have only a tangential connection to this case, but would consume a great deal of time and distract the jury. See *Olson*, 410 F.Supp.2d at 875 (holding that the recall evidence's "limited probative value" was outweighed by the dangers of prejudice, confusion of the issues, misleading of the jury, and undue delay because the evidence would mislead the jury to believe that simply because prior products were defective, the product in question was also defective).

1
2

**E.    Defendant's Motion to Limit the Testimony of Plaintiffs' Experts to the Facts and Opinions the Expert Stated at Deposition and in Rule 26 Disclosures**

3     Wahl also seeks an order precluding plaintiffs' experts from testifying to facts and opinions

4     not in their expert witness reports or the subject of testimony at their depositions.[55]  Plaintiffs

5     counter that an "expert is not restricted to merely read verbatim from the report or transcript"[56]

6     and that experts can elaborate on opinions offered at deposition or their report.  Plaintiffs also

7     contend that not all new or supplemental expert testimony is prohibited, because in certain

8     circumstances, if the other party is not prejudiced by the new statements, they will be admitted.[57]

9     Plaintiffs thus request that the court deny the motion, subject to its renewal, if appropriate, at trial.

10     Rule 26 requires that "a party must disclose to the other parties the identity of any witness

11     it may use at trial [as an expert]."  FED.R.CIV.PROC. 26(a)(2)(A).  Parties must also provide a

12     "written report" containing, among other things, "a complete statement of all opinions the witness

13     will express and the basis and reasons for them." FED.R.CIV.PROC. 26(a)(2)(B)(I).  Under Rule

14     37(c)(1), a party who fails properly to disclose information as required by Rule 26(a) "is not

15     allowed to use that information or witness to supply evidence on a motion, at a hearing or at a

16     trial" unless the party's failure to disclose was "substantially justified" or "harmless."

17     Wahl does not identify the specific opinions it expects plaintiffs' experts to offer that

18     exceed the scope of their expert witness reports.  The court is thus unable to evaluate whether the

19     expected testimony would violate Rule 26, or whether such a departure would be substantially

20     justified or harmless.

21

22     [55]Limit Testimony of Experts MIL at 3-4; Reply in Support of Defendant's Motion in
23     Limine to Limit Testimony of Plaintiffs' Experts to Substance of the Facts and Opinions Which
24     the Expert Testified to at Deposition and in his Rule 26 Disclosure ("Reply in Support of Limit
       Testimony of Experts MIL"), Docket No. 98 (July 16, 2012).

25     [56]Plaintiffs' Opposition to Defendant's Motion *in Limine* to Limit Testimony of Plaintiffs'
26     Experts to Substance of the Facts and Opinions Which the Expert Testified to at Deposition and
27     in his Rule 26 Disclosure ("Opp. to Limit Testimony of Experts MIL"), Docket No. 79 (July 9,
       2012) at 2.

28     [57]*Id*. at 3.

1    The court cannot resolve an evidentiary motion with only a vague idea of the evidence at

2    issue. *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, No. CV 08-8525 PSG (PJWx),

3    2010 WL 2035800, *1 (C.D. Cal. May 19, 2010) (to serve their intended purpose, "motions *in*

4    *limine* must identify the evidence at issue and state with specificity why such evidence is

5    inadmissible"); *United States v. Cline*, 188 F.Supp.2d 1287, 1292 (D. Kan. 2002) ("As a

6    procedural matter, the movant should identify the particular evidence at issue and articulate with

7    specificity the arguments supporting the position that the particular evidence is inadmissible on any

8    relevant ground.  A court is well within its discretion to deny a motion *in limine* that fails to

9    identify the evidence with particularity or to present arguments with specificity"); *National Union*

10   *Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Group*, 937 F.Supp. 276, 287 (S.D.N.Y.

11   1996) ("This motion *in limine* lacks the necessary specificity with respect to the evidence to be

12   excluded or the purported reason for the introduction of such evidence.").  As a result, while the

13   court reminds plaintiffs of their obligation to confine their experts' testimony to the subjects on

14   which they have previously opined and the opinions they have previously offered, it denies Wahl's

15   motion *in limine* to limit the testimony of plaintiff's experts.

16       **F.    Defendant's Motion to Exclude Evidence or Comment Concerning Other**

17              **Incidents, Claims, Allegations, Citations and Actions Involving Other Incidents**

18       Wahl seeks an order precluding all evidence of other incidents, lawsuits, or disputes

19   involving its product.[58]  Wahl asserts that such evidence is inadmissible under Rule 404, which,

20   as noted, provides that "[e]vidence of a person's character or a trait of character is not admissible

21   for the purpose of proving action in conformity therewith on a particular occasion[.]"

22       As discussed above, it is unclear whether Rule 404(b) applies to a corporate defendant.

23   Even if the court were to conclude that it did, however, Wahl's motion does not identify the

24   evidence of "other incidents" it seeks to exclude.[59]  The court cannot grant such a motion in the

25

26       [58]Exclude Evidence Concerning Other Incidents MIL at 3.

27       [59]To the extent Wahl seeks to exclude evidence of recalls of its products, the court has
28   addressed that issue above.

19

abstract.[60]   Without knowing what evidence is in question, the court cannot determine the purpose(s) for which it might be offered – a necessary step in analyzing evidence under Rule 404(b).  Nor can the court weigh the probative value of the evidence against the risk of prejudice. The court, therefore, denies the motion.  It notes, however, plaintiffs' statement that they are "not opposed" to placing Rule 404(b) limits on evidence, and therefore directs the parties to meet and confer no later than **August 13, 2012**, to determine if they can reach a stipulation concerning all or some part of the evidence that is the subject of this motion.  The parties are directed to file their stipulation , or a joint report stating that they have been unable to reach a stipulation on or before **August 20, 2012**.  If the parties are unable to reach agreement, their joint report must set forth the specifics of their disagreement and their respective positions concerning the items of evidence in dispute.

> **G.    Defendant's Motion to Preclude Testimony of Witnesses, Production of Documents and Other Evidence Not Previously Disclosed by Plaintiffs**

Wahl moves, pursuant to Rule 26, to for "an order precluding plaintiffs' from producing any evidence, documents or witnesses not previously disclosed. . . ."[61]  As with several of its other motions, Wahl's motion does not detail the undisclosed documents or witnesses it fears will be offered by plaintiffs at trial.  Although plaintiffs filed a witness list,[62] and a joint exhibit list[63] before Wahl's reply was filed, the reply similarly provides no information about the documents

---

[60]Plaintiffs' Opposition to Defendant's Motion to Defendant's Motion in Limine toExclude Evidence or Comment Concerning Other Incidents, Claims, Allegations, Citations, and Actions Involving Other Incidents ("Opp. to Exclude Evidence Concerning Other Incidents MIL"), Docket No. 81 (July 9, 2012) at 3.

[61]Preclude Witness Testimony MIL at 3.

[62]Plaintiffs Shonali Bose and Bedabrata Pain's Witness List ("Witness List"), Docket No. 82 (Jul. 9, 2012).

[63]Joint Exhibit List, Docket No. 86 (Jul. 9, 2012).

1   or witnesses Wahl seeks to exclude.[64]  As noted, a motion *in limine* cannot be resolved without

2   a clear idea of the evidence at issue, nor is such a motion proper when it merely serves to remind

3   the parties, in the abstract, that they must adhere to the Federal Rules of Civil Procedure.  See

4   *Colton Crane Co.*, 2010 WL 2035800 at *1; *Cline*, 188 F.Supp.2d at 1292.  The pretrial

5   documents provide a clear picture of the witnesses and evidence plaintiffs may seek to admit at

6   trial.  Should Wahl conclude that any witness or exhibit identified was not disclosed in conformity

7   with the federal rules, it may raise the matter at trial.

8         **H.    Motion to Exclude Testimony by Erik Christiansen**

9         Wahl next moves to exclude the testimony of plaintiff's expert witness, Erik Christiansen,

10  pursuant to Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).[65]

11   Rule 702 governs the admission of expert testimony.  Under Rule 702,

12         "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact

13         to understand the evidence or to determine a fact in issue, a witness qualified as an

14         expert by knowledge, skill, experience, training, or education, may testify thereto

15         in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient

16         facts or data, (2) the testimony is the product of reliable principles and methods,

17         and (3) the witness has applied the principles and methods reliably to the facts of

18         the case."  FED.R.EVID. 702.

19  See also *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002) ("[Rule 702] consists of

20  three distinct but related requirements: (1) the subject matter at issue must be beyond the common

21  knowledge of the average layman; (2) the witness must have sufficient expertise; and (3) the state

22  of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion"); *Sterner*

23  *v. U.S. Drug Enforcement Agency*, 467 F.Supp.2d 1017, 1033 (S.D. Cal. 2006) ("There are three

24  _____

25      [64]Reply in Support of Defendant's Motion to Preclude Trial Testimony from Witnesses,

26  Production of Documents and Evidence Not Previously Disclosed Pursuant to Federal Rules of
    Civil Procedure 16, 26, and 37 ("Preclude Witness Reply"), Docket No. 104 (Jul. 16, 2012).

27      [65]Motion *in Limine* to Exclude Testimony of Plaintiffs' Expert Erik Christiansen Based on

28  Federal Rule of Evidence 702 and *Daubert* ("Christiansen MIL"), Docket No. 64 (Jul. 2, 2012).

1  basic requirements that must be met before expert testimony can be admitted.  First, the evidence
2  must be useful to a finder of fact.  Second, the expert witness must be qualified to provide this
3  testimony.  Third, the proposed evidence must be reliable or trustworthy" (citations omitted)).

4       Before admitting expert testimony, the trial court must make "a preliminary assessment
5  of whether the reasoning or methodology underlying the testimony is scientifically valid and of
6  whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*
7  *v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993).

8       "In *Daubert* the Supreme Court set forth a non-exclusive list of factors to determine
9  whether scientific testimony is sufficiently reliable: (1) whether the scientific theory or technique
10 can be tested; (2) whether the theory or technique has been subjected to peer review and
11 publication; (3) whether there is a known or potential error rate; and (4) whether the theory or
12 technique is generally accepted in the scientific community.  *Clausen v. M/V NEW CARISSA*, 339
13 F.3d 1049, 1056 (9th Cir. 2003) (citing *Daubert*, 509 U.S. at 593-95).  In conducting this
14 preliminary assessment, the trial court is vested with broad discretion.  See, e.g., *General Elec.*
15 *Co. v. Joiner*, 522 U.S. 136, 142 (1997); *United States v. Espinosa*, 827 F.2d 604, 611 (9th Cir.
16 1987) ("The decision to admit expert testimony is committed to the discretion of the district court
17 and will not be disturbed unless manifestly erroneous").

18      "The party offering the expert bears the burden of establishing that Rule 702 is satisfied."
19 *Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, No. CV 02-2258 JM (AJB), 2007 WL
20 935703, *4 (S.D. Cal. Mar. 7, 2007) (citing *Allison v. McGhan Medical Corp.*, 184 F.3d 1300,
21 1306 (11th Cir. 1999), in turn citing *Daubert*, 509 U.S. at 592 n. 10)); see also *Walker v. Contra*
22 *Costa County*, No. C 03-3723 TEH, 2006 WL 3371438, *1 (N.D. Cal. Nov. 21, 2006) (same,
23 citing *Bourjaily v. United States*, 483 U.S. 171, 172 (1987), and *In re Paoli R.R. Yard PCB*
24 *Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)).[66]

25      "In determining whether expert testimony is admissible under Rule 702, the district court

26

27      [66]This showing must be by a preponderance of the evidence.  See *Daubert*, 509 U.S. at 594
28 n. 10 (citing *Bourjaily*, 483 U.S. at 175-76).

1    must keep in mind Rule 702's broad parameters of reliability, relevancy, and assistance to the trier

2    of fact." *Sementilli v. Trinidad Corp.*, 155 F.3d 1130, 1134 (9th Cir. 1998) (internal quotation

3    marks omitted); see also *Jinro Am. Inc. v. Secure Invests., Inc.*, 266 F.3d 993, 1004 (9th Cir.

4    2001) ("Rule 702 is applied consistent with the 'liberal thrust' of the Federal Rules and their

5    general approach of relaxing the traditional barriers to opinion testimony" (internal quotation

6    marks omitted)).

7        Wahl's motion asserts multiple objections to Christiansen's expert report and certain of its

8    points are unclear.  The court endeavors to address its arguments below.

9              **1.    Christiansen's Confidence about the Source of the Fire**

10       Wahl argues that Christiansen's expert report is inconsistent about the source of the fire,

11   and that this undermines its credibility.[67]  In his report, Christiansen states: "More likely than not,

12   the ignition source for the flash fire was the clipper being used by Mr. Bose-Pyne at the time of

13   the incident."[68]  He reiterated that conclusion at his deposition.[69]  Wahl contends Christiansen's

14   professed confidence in this conclusion is undermined by his deposition testimony.  It states:

15            "To support ths opinion, Christian set forth in his deposition *possible* methods for

16            how the fire ignited.  The first method was friction between the two blades, which

17            could emit mechanical sparks when they rub together during operation.  The second

18            method was 'interference' due to the alleged misalignment of the two blades, which

19            could emit mechanical sparks sufficient to ignite the alcohol.  In regard to each of

20            these causes, he claimed that they were 'possible'; he did not say either possibility

21

22   ───────────────

23       [67]Christiansen MIL at 5.

24       [68]Plaintiff Shonali Bose and Bedabrata Pain's Opposition to Defendant Wahl Clipper

25   Corporation's Motion to Exclude Testimony of Plaintiff's Expert Dr. Erik Christiansen Based on
     Federal Rule fo Evidence 702 and *Daubert* ("Christiansen Opposition"), Docket No. 77 (Jul. 9,
     2012), Exh A. ("Christiansen Report") at v.  Elsewhere in the report, Christiansen asserts that

26   "[t]he findings presented herein are made to a reasonable degree of engineering certainty."  (*Id.*

27   at 19.)

28       [69]Christiansen MIL at Exh. B ("Christiansen Depo.") at 76:14-77:2.

1    was more likely than not to have actually happened."[70]

2    In a tacit admission that Christiansen's deposition is not as plainly inconsistent as it asserts, Wahl

3    does not cite any portion of the deposition that supports its point. In the only cited excerpt,

4    Christiansen says nothing about his confidence in his conclusions, or whether various explanations

5    for the incident are "probable" or merely "possible."[71]  While no portion of the transcript that

6    has been submitted deals with the likelihood that a spark caused the fire, Christiansen conceded

7    at his deposition that it was a "just a possibility" that friction from components of the trimmer was

8    sufficient to create heat that, even without a spark, could ignite a flammable mixture.[72]  Even if

9    Christiansen concluded that it was merely possible that heat from friction caused the fire, and/or

10   that a spark caused the fire, this would not be inconsistent with his conclusion that the trimmer

11   was the probable cause of the fire.  Several possible sources associated with the trimmer could

12   have combined to make it more likely than not that the trimmer, as opposed to some other object,

13   was the source of the fire.[73]

14   _____

15   [70]Christiansen MIL at 5 (citations omitted).

16   [71]Christiansen Depo. at 80:24-81:2 ("A blades are in contact with each other. They're held

17   together with a spring. And so during normal operation of the trimmer, you would get friction

18   and rubbing between the blades.") While Wahl cites the declaration of its own expert, Gerald F.
     Zamiski, Zamisky does not identify any deposition excerpts that demonstrate Christiansen testified

19   the causes of the accident he identified were merely possible. (See Declaration of Gerald F.
     Zamiski ("Zamiski MIL Decl."), ¶ 4.)

20

21   [72]Christiansen Depo. at 88:5-25 ("Q. All right. And you think friction could also produce
     sparks? A. I'm sorry. I said friction can create heat. Q. Okay. A. That may be sufficient to

22   ignite the mixture. Q. Okay. But not actually produce a spark, friction alone? A. Correct. It's

23   possible that it would simply create enough heat to ignite the mixture.  Q. And how much heat
     would be required to ignite the mixture?  A. The M.S.D.S. sheet for isopropyl alcohol says the

24   auto ignition temperature is 399 degrees centigrade. Q. Which is how much Fahrenheit? A. 750

25   degrees. Q. And you believe that friction alone could cause at least a portion of the metal to heat
     up to 750 degrees Fahrenheit? A. It's a possibility, yes. Q. Just a possibility? A. That's

26   correct. It's a possibility").

27   [73]In the same way, one could say that it is only "possible" that a gambler rolling dice will

28   role a 3, but "probable" that he will roll a number lower than five. That is because while the odds
     of rolling any particular number are one in six, the odds of rolling less than five are four in six,

Wahl also cites a statement by Christiansen at his deposition, in which he suggested that a parting arc from plaintiff unplugging the trimmer could have ignited alcohol vapors.[74] Christiansen explained that "when you have current flowing through conductors that are in contact with each other and, as you pull those conductors apart, you sometimes get an arc drawn between those two conductors momentarily."[75]   The deposition transcript includes an exchange about whether a parting arc could have caused the fire:

"Q.    So it – and this is just a hypothetical.  If Mr. Bose-Pyne had the charger connected to the wall and then pulled it out while he was using it, while the trimmer was on, the act of pulling it could result in a parting arc?

A.    Under that hypothetical, then, yes, you could get a parting arc from that situation.

Q.    And would that parting arc, under that hypothetical situation, be sufficient to ignite alcohol vapors that might be in the vicinity of the outlet?

A.    It's possible that it could, yes."[76]

It is not clear why Wahl believes this discussion warrants excluding Christiansen.   While Christiansen acknowledges the possibility of a parting arc in his expert report, he concludes that this is unlikely to be the source of the fire for a number of reasons.[77]   Christiansen's deposition testimony is consistent with his conclusion in the report that "[m]ore likely than not, the ignition source for the flash fire was the clipper being used by Mr. Bose-Pyne at the time of the

_____

or more likely than not.

[74]Christiansen MIL at 5.

[75]Christiansen Depo. at 73:2-6.

[76]*Id.* at 73:12-21.

[77]Christiansen Report at 17 ("[T]here is not evidence that Mr. Bose-Pyne was in the act of plugging or unplugging any devices or operating any electrical switches when the incident occurred.  Examination of the electrical outlets, switches, and exhaust fan in the bathroom did not reveal any evidence of fire, heat, soot or electrical arcing.  Moreover, the circuit breaker to the bathroom did not trip, indicating it is unlikely that any short circuit electrical arcing occurred").

incident."[78]  The fact that Christiansen acknowledges the possibility that a parting arc might have caused the fire does not render his testimony inadmissible.  See *Turck v. Baker Petrolite Corp.*, 10 Fed. Appx. 756, 766 (10th Cir. May 31, 2001) (Unpub. Disp.) ("Expert opinions 'must be based on facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation.'  However, 'absolute certainty is not required'" (citation omitted)); see also *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) ("Lack of certainty is not, for a qualified expert, the same thing as guesswork").

### 2.    Whether the Trimmer Was in Operation

Wahl argues that Christiansen has no evidence that the trimmer was in operation at the time of the fire, and that such evidence is necessary for his theory to be viable.[79]  Christiansen, however, testified at deposition that he based his conclusion on Los Angeles Fire Department investigation reports, the same source he cites in his expert report.[80]  Under Rule 703 of the Federal Rules of Evidence, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."  Wahl has not argued that Christiansen's reliance on the Los Angeles Fire Department reports was improper, and this objection thus provides no grounds for excluding Christiansen.

### 3.    Whether Christiansen Sufficiently Tested His Theory

Wahl contends that Christiansen failed to test his hypothesis that heat due to friction or a

---

[78]*Id.* at 18.

[79]Christiansen MIL at 6.

[80]Christiansen Depo. at 100:1-10 ("Q.  Okay.  Now, other than the information contained within the fire investigation report, are you aware of any other evidence to indicate that Mr. Bose-Pyne was using the Wahl trimmer, beard trimmer, at the time of the fire?  A.  It's also mentioned in the fire department follow-up report as well as their initial investigation report.  Q.  Okay.  Other than those two reports, do you have any other information?  A.  No, I do not.");  Christiansen Report at 1.

mechanical spark from the trimmer caused the fire.[81]  At his deposition, Christiansen conceded that he did not attempt to reassemble the clipper so that he could operate it.[82]  He also conceded that he did not attempt to obtain a clipper of the same model, but noted that he had been told by plaintiff's counsel that one could not be found.[83]

"Ordinarily, a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested." *Daubert*, 509 U.S. at 593.  Here, Christiansen based his conclusions on a site inspection of the bathroom where the fire allegedly started,[84] and a review of the component parts of the trimmer.[85]  Noting damage to the trimmer that was "consistent with interference or rubbing during operation," Christiansen concluded that "such friction can cause heat or mechanical sparks sufficient to ignite flammable mixtures."[86]

Christiansen did not test his theory, either using the actual trimmer at issue or another trimmer of the same model.  Courts in similar situations, however, have concluded that the lack of such testing does not render the expert's testimony inadmissible.  In *Thompson v. Whirlpool Corporation*, No. C06-1804-JCC, 2008 WL 2063549 (W.D. Wash. May 13, 2008), plaintiffs filed

---

[81]Christiansen Mil at 7.

[82]Christiansen Depo. at 19:18-25.

[83]*Id.* at 42:2-17 (Q. And when he asked you about it, what was your response?  A.  I told him that I had discussions with my client, Mr. Lee, about obtaining an exemplar and he had indicated that they found it was impossible to find one.  Q.  Did you ask Mr. Lee whether he could obtain an exemplar from my client or from my office?  A.  We had that discussion, yes. We discussed it as a possibility.  Q.  Did Mr. Lee tell you that he had attempted to obtain an exemplar from my office?  A.  I don't recall him saying that.  Q.  Did Mr. Lee tell you why he felt it would be impossible to obtain an exemplar?  A.  He said that himself or other people in his firm were actively trying to find one and were unsuccessful"), see also *id.* at 43:15-19 ("Q.  Did you make any attempt to obtain an exemplar yourself.  A.  No, I did not.  Q.  Do you know if anybody from Exponent did?  A.  I don't believe anyone within Exponent did, no").

[84]Christiansen Report at 5-9.

[85]*Id.* at 10-15.

[86]*Id.* at 18.

27

a products liability action when a fire broke out in the kitchen of their home only two days after they installed a new refrigerator manufactured by defendant. *Id.* at *1. Defendant objected to plaintiffs' expert, Douglas Barovsky, who intended to testify that, "in his expert opinion, the fire originated inside the freezer compartment of the refrigerator, in or around the freezer compartment's evaporator coil, and its source of ignition was heat generated from a failed high resistance electrical connection." *Id.* As part of his investigation, Barovsky examined the scene of the fire and the physical condition of the refrigerator. *Id.* at *1-2.

Defendant challenged Barovsky's failure to conduct any testing to confirm his conclusion about the cause of the fire. *Id.* at *5. The court concluded that Barovsky's failure to test was more properly considered by the jury in evaluating the weight to be given to his testimony. *Id.* It noted that the failure to test does not automatically render expert testimony about the origin of a fire inadmissible, *id.*, and added that Barovsky "explained that he was unable to conduct meaningful testing in this case because, due to extensive fire damage, the defrost heater in Plaintiffs' refrigerator could not itself be tested, and the particular defrost heater that was located in Plaintiffs' freezer is no longer manufactured," *id.* While defendant argued that this explanation was not credible, because the refrigerator was new and Barovsky was retained not long after the fire, the court held that it went to the weight a jury should properly afford to the testimony. *Id.*; see also *Martin v. Shell Oil Co.*, 180 F.Supp.2d 313, 319 (D. Conn. 2002) ("The *Daubert* factors and scientific methodology require that an opinion be testable, not that it necessarily be tested. While the plaintiffs place themselves at risk of strong cross-examination, the underlying explanation is not flawed for failure to test an explanation").

Similarly, in *Hickerson v. Pride Mobility Products Corporation*, 470 F.3d 1252 (8th Cir. 2006), plaintiff claimed that his wife died in a house fire caused by a defective motorized scooter. *Id.* at 1253. Plaintiff's expert concluded that the scooter was a possible cause of the fire, basing his conclusion on burn patterns and damage, "and on the facts that the remains of the PowerChair were sitting at the center of the area of origin and that no other appliance in the area of origin contained batteries or was connected to an external power source at the time of the fire." *Id.* The court concluded that the expert's methodology, which involved examining burn patterns in order

to identify the sources of the fire, and the elimination of other possible causes, was sound. *Id.* at 1257 (citing *Weisgram v. Marley Co.*, 169 F.3d 514, 519 (8th Cir. 1999) ("Now, as a qualified expert in fire investigation, Freeman was free to testify – as he did – that the burn and smoke patterns and other physical evidence indicated that, in his opinion, the fire started in the entryway and radiated to the sofa")).

In this case, Christiansen examined the scene of the fire and the trimmer. He considered other possible sources of the fire, including the ceiling fan that Wahl suggests is the most likely source, and explained why he found it less likely that those alternate sources caused the fire.[87] The court agrees with prior courts that have found these methods sufficient to permit an expert to opine.

Furthermore, the report of Wahl's expert suffers from the same purported deficiencies as Christiansen's report.[88] In his initial expert report, Zamiski relied on a visual inspection of the trimmer to conclude that it was unlikely to have been the source of the fire.[89] Zamiski noted that "[a]n operating wall fan could have pulled in flammable vapors and ignited them at the AC motor," and concluded that this was a more likely source of the fire than the trimmer.[90] The report does not state that Zamiski tested the trimmer to determine the likelihood that it could have caused a fire under the conditions present at the time of the incident, nor does it suggest that Zamiski tested the ceiling fan that he concluded was a more likely source of the fire. Rather, to the extent that the basis of his conclusions can be discerned, Zamiski, like Christiansen, appears to rely on his experience and knowledge of various household items and the likelihood that they can cause fires under certain circumstances.[91]

---

[87]*Id.* at 5-6.

[88]See generally Zaminski Expert Report.

[89]*Id.* at 4-5.

[90]*Id.* at 8.

[91]In its reply, Wahl notes that Zamiski conducted tests on the model of trimmer found in Bose-Pyne's home, and provided his findings at his deposition and in a supplemental expert report.

**4.    Whether Christiansen's Conclusion Is Supported by Methods Generally
Accepted in the Scientific Community**

Wahl asserts finally that Christiansen's methodology is not supported by the scientific
community.[92]  It contends that, contrary to Christiansen's statements, stainless steel does not have
a propensity to generate sparks, and that Christiansen "is unable to offer any evidence that the
scientific community has found that electric blade trimmers are physically capable of generating
sufficient energy to emit sparks or have ever been known to emit sparks.[93]

This argument misapprehends the requirement under Rule 702 that an expert's conclusion
be "the product of reliable principles and methods."  FED.R.EVID. 702(c).  Under the rule, the
court is to evaluate the methodology used by the expert, not the conclusions reached.  See
*Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230–31 (9th Cir.1998) ("In arriving at a conclusion,
the factfinder may be confronted with opposing experts, additional tests, experiments, and
publications, all of which may increase or lessen the value of the expert's testimony.  But their
presence should not preclude the admission of the expert's testimony – they go to the weight, not
the admissibility"); *McClellan v. I–Flow Corp.*, 710 F.Supp.2d 1092, 1101 (D. Or. 2010)
("[E]stablishing reliability should not mean that plaintiffs 'have to prove their case twice – they
do not have to demonstrate to the judge by a preponderance of the evidence that the assessments
of their experts are correct, they only have to demonstrate by a preponderance of evidence that
their opinions are reliable,'" quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 744); *see also*

_____

(Reply in Support of Defendant's Motion *in Limine* to Exclude Testimony of Plaintiff's Expert Dr.
Erik Christiansen based on Federal Rule of Evidence 702 and *Daubert* ("Christiansen Reply"),
Docket No. 105 (Jul. 16, 2012), Exh. A (Deposition of Gerald F. Zamiski, Ph.D. ("Zamiski
Decl.") at 34:19-36:6); *id.*, Exh. B (Supplemental Report) at 4.)  Zamiski, however, apparently
did not consider testing so critical that he reported having conducted it in his initial expert report,
nor is there evidence that Zamiski ran similar tests to evaluate the soundness of his conclusion that
the ceiling fan was the most likely source of the fire.  To the extent Zamiski's testing undermines
Christiansen's conclusions, Wahl can elicit that fact through testimony at trial.

[92]Christiansen MIL at 8.

[93]*Id.*

1    *United States v. Prime*, 431 F.3d 1147, 1153 (9th Cir. 2005) (stating that the proper inquiry

2    focuses "'solely on principles and methodology, not on the conclusions that they generate,'"

3    quoting *Daubert*, 509 U.S. at 595, and that "[a]s long as the process is generally reliable, any

4    potential error can be brought to the attention of the jury through cross-examination and the

5    testimony of other experts"); *Cholakyan v. Mercedes-Benz, USA, LLC*, No. CV 10–05944 MMM

6    (JCx), 2012 WL 1066755, *6 (C.D. Cal. Mar. 28, 2012) (same).   As noted, Christiansen's

7    methods – examination of the scene of the fire and of the devices that might have caused it – has

8    been accepted in other cases, and is precisely the methodology that was used by Wahl's expert in

9    his initial report.   The court concludes, therefore, that this argument does not warrant exclusion

10    of Christiansen's testimony.

### 5.    Conclusion Regarding Christiansen's Testimony

12    "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence,

13    and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564.   While there

14    may be weaknesses in Christiansen's expert report, these can be exploited on cross-examination

15    and the jury can weigh them against the testimony of Wahl's expert.   Consequently, Wahl's

16    motion to exclude Christiansen's testimony is denied.

### I.    Defendant's Motion to Exclude Plaintiffs' Lost Profits

18    Wahl seeks to preclude plaintiff Shonali Bose from offering damages evidence about profits

19    lost due to the fact that a movie she was working on at the time of the accident was not released.[94]

20    Wahl expects Bose to testify that she and Pain were in the process of completing the motion

21    picture "Chittagong" for the Indian film market when Bose-Pyne died.[95]   Wahl states that Bose

22    plans to testify that due to witnessing her son's death, the film was not released on time, and that

23    she is therefore entitled to recover lost profits.[96]   It contends that evidence or testimony regarding

24    lost profits would be both speculative and prejudicial, and should be barred under California Civil

---

26    [94]Lost Profits MIL at 3.

27    [95]*Id.*

28    [96]*Id.* at 4.

1    Code § 3283.

2         Under California law, "[d]amages may be awarded, in a judicial proceeding, for detriment

3    resulting after the commencement thereof, or certain to result in the future." CAL. CIV. CODE §

4    3283; see also *Piscitelli v. Friedenberg* , 87 Cal.App.4th 953, 989 (2001) (stating that damages

5    cannot be speculative, and are limited to those that are "reasonably certain to have been realized

6    but for the wrongful act of the opposing party"); *Mozzetti v. City of Brisbane*, 67 Cal.App.3d 565,

7    577 (1977) ("It is black-letter law that damages which are speculative, remote, imaginary,

8    contingent or merely possible cannot serve as a legal basis for recovery").

9         Wahl argues that, based on plaintiffs' depositions, Bose's work on the film was complete

10   at the time of the accident.[97]  It notes additionally, citing plaintiffs' depositions once again, that

11   (1) Bose's other commercial film was a financial failure, (2) no one guaranteed the financial

12   success of plaintiffs' film, and (3) a similar film concerning the same subject released at about the

13   same anticipated time was a financial failure.[98]  Finally, Wahl notes that plaintiff have not

14   designated an expert to calculate or testify concerning lost profits.[99]

15        Plaintiffs concede they have not designated a financial expert, but argue that "if reliable,

16   lost profits may be shown by information within the control of the plaintiff."[100]  Plaintiffs,

17   however, do not identify the evidence they can provide regarding lost profits or show that it is

18   more than speculative.  Their opposition merely describes Pain's and Bose's resumes, provides

19   a history of their media and entertainment business, and discusses the importance of releasing the

20   film on time.[101]

21        To determine whether plaintiffs' evidence of lost profits is speculative or of the type that

22   _____

23       [97]*Id.* at 3.

24       [98]*Id.*

25       [99]*Id.*

26       [100]Plaintiffs' Opposition to Defendant's Lost Profits MIL ("Opp. to Lost Profits MIL"),
27   Docket No. 88 (July 9, 2012) at 3.

28       [101]*Id.* at 2-5.

can be submitted to the jury, the court directs plaintiffs to make an offer of proof no later than **August 6, 2012**, concerning the testimony and/or documentary evidence they intend to present to support their lost profits claim.  Wahl may file a response no later than **August 13, 2012**.[102]

### III.  CONCLUSION

The court grants as unopposed Wahl's motions to exclude any evidence related to emotional distress suffered by Pain, Bose-Pyne's father; to limit plaintiffs' damages based on medical bills to the amount actually paid by plaintiffs' health insurer, rather than the higher amount billed but written off by the healthcare provider; to preclude plaintiffs from calling an expert witness in psychotherapy, counseling, or psychiatry to testify regarding Bose's emotional distress claim; to exclude evidence or comment regarding liability insurance; to exclude evidence of settlement negotiations or offers of compromise; and to exclude evidence of Wahl's subsequent remedial measures.    If plaintiffs wish to offer evidence of insurance or subsequent remedial measures for a purpose permitted by Rule 411 or 407 of the Federal Rules of Evidence, they are directed to raise the matter outside the presence of the jury before attempting to introduce the evidence so that its admissibility can be evaluated.

For the reasons stated, the court denies Wahl's motion to exclude comments made by Wahl about the merits of plaintiffs' case or the cause of the incident to the extent the comments concern Wahl's theory that Bose-Pyne was injured either while igniting Axe body spray as an experiment or prank or while attempting to "huff" isopropyl alcohol.  Additionally, the court directs Wahl, at the hearing on the motion, to state whether it intends to argue or suggest at trial that Bose-Pyne's injuries were the result of an intentional effort to harm himself.  Defendant's motion to exclude photographs of Bose-Pyne's burned body is denied, but plaintiffs are directed to identify, on or before **August 6, 2012**, which of the thirteen photographs they seek to present to the jury so the court can assess whether the evidence will be cumulative.

_____

[102]Wahl also asserts that the evidence is "highly prejudicial." (Lost Profits MIL at 3.)  It is prejudicial only in the sense that it would increase the damages Wahl might have to pay.

1    Wahl's motion to exclude of evidence of other Wahl product recalls is granted, and its
2   motion to limit the testimony of plaintiffs' experts to the facts and opinions set forth in their expert
3   reports or at their depositions is denied.  Wahl's motion to exclude evidence of other incidents or
4   claims is denied, but the parties are directed to meet and confer no later than **August 13, 2012**,
5   to determine if they can reach a stipulation concerning all or some part of the evidence that is the
6   subject of the motion.  The parties are directed to file a stipulation , or a joint report stating that
7   they have been unable to reach a stipulation, on or before **August 20, 2012**.  If the parties are
8   unable to reach agreement, their joint report must set forth the specifics of their disagreement and
9   their respective positions concerning the items of evidence in dispute.

10    Wahl's motion to preclude testimony of witnesses and introduction of evidence not
11   previously disclosed is denied, as is its motion to exclude testimony by Erik Christiansen.   The
12   court defers ruling on Wahl's motion to exclude evidence of lost profits, and directs plaintiffs to
13   make an offer of proof no later than **August 6, 2012**, concerning the testimony and/or
14   documentary evidence they intend to present to support their lost profits claim.  Wahl may file a
15   response no later than **August 13, 2012**.

16    The court will conduct a Rule 104 hearing regarding the admissibility of Bose-Pyne's
17   alleged statements to Bose and/or to paramedics on **Tuesday, August 21, 2012 at 1:30 p.m.**
18   Plaintiffs are directed to produce Shonali Bose to testify regarding the timing of and circumstances
19   surrounding her son's alleged statements.  Should plaintiffs wish to admit evidence of Bose-Pyne's
20   purported statements to paramedics, they must produce the paramedic or paramedics to whom the
21   statements were made to testify as well.

23   DATED: July 30, 2012

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE